UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JARED M. WILLIAMS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:20-CV-1774 JSD |
| | ) |
| DAVID VANDERGRIFF, | ) |
| | ) |
| Respondent.[1] | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Jared M. Williams ("Williams" or "Petitioner") for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1) and Petitioner's First Amended Petition for a Writ of Habeas Corpus (ECF No. 10). Respondent David Vandergriff ("Respondent") has filed a response. (ECF No. 18). Williams filed a traverse. (ECF No. 21). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.    BACKGROUND**

Williams is currently incarcerated at the Potosi Correctional Center. Respondent David Vandergriff, Warden of the Potosi Correctional Center, is Williams's custodian and the proper respondent. 28 U.S.C. § 2254.

In his habeas petition, Williams raises two claims for relief: (1) that his convictions were secured in violation of his equal protection rights as articulated in *Batson v. Kentucky*, 476 U.S.

---

[1] According to the Missouri Department of Corrections website, Williams is currently housed at the Potosi Correctional Center.  *See* https://web.mo.gov/doc/offSearchWeb/  (last visited February 13, 2024).  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, David Vandergriff, Warden of the Potosi Correctional Center, is substituted for Michele Buckner as the Respondent in this suit.  The Court will order the Clerk to substitute David Vandergriff as the Respondent in this case.

1

79 (1986), because the State purposely prevented an African-American woman from serving as a member of the jury; and (2) that his trial counsel provided ineffective assistance in failing to investigate and raise his theory of self-defense.

The Missouri Court of Appeals summarized the pertinent facts in this case:

> The facts, which this Court reviews in the light most favorable to the verdict, indicate that in the early morning hours of July 19, 2010, at Sugar Lounge in downtown St. Louis, Defendant fired a gun at a large group of individuals standing outside Sugar Lounge. Three African-American individuals were injured as a result of Defendant's firing of the gun.
> At trial, the State exercised all six of its peremptory challenges to remove African American female venirepersons. As a result of the State's peremptory strikes, three African Americans, including one African-American female, served on the jury. Defendant timely challenged these strikes pursuant to *Batson*. After the State offered explanations for each of the six stricken venirepersons, Defendant countered that the State's explanations were merely pretextual. The trial court denied Defendant's *Batson* challenges.
> Defendant's trial ensued, and the jury found Defendant guilty as charged. Having previously found Defendant to be a prior offender, the trial court sentenced Defendant to terms of 25 years and 15 years, to run concurrently.

(Missouri Court of Appeals Order, dated June 30, 2014; ECF No. 18-6 at 3 (footnote omitted)).

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

2

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-91 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

3

## III.   DISCUSSION

### A.   Claim 2: Self-Defense Theory

Claim 2 raises an ineffective assistance of counsel claim based upon trial counsel's alleged failure to investigate and present evidence of self-defense at Williams's trial.[2] At Williams's post-conviction evidentiary hearing, trial counsel testified that his defense strategy was to discredit the State's eyewitnesses regarding their identification of Williams as the shooter. (ECF No. 10 at 36; ECF No. 18-9 at 30). Williams argues that trial counsel's strategy was "fatally flawed" and his decision not to present evidence that Williams was acting in self-defense "fell below an objective standard of reasonableness." (ECF No. 10 at 36). Williams references his testimony at his evidentiary hearing regarding his proposed self-defense theory:

> Petitioner testified that on the night of the shooting, he parked his Camaro near the intersection of 14th and Locust Streets. (E.H. 82). He testified that he got out of his vehicle to head towards Sugar Lounge. (E.H. 82). Petitioner was halfway through the parking lot when he was approached by a young woman who began flirting with him. (E.H. 82). A few moments later, a group of men ran up and surrounded him. (E.H. 82). The men were yelling, threatening, and cussing at him. (E.H. 82). Petitioner stated that he was continuing to walk towards Sugar Lounge when the other group ran back over to him. (E.H. 82). The group again surrounded him. (E.H. 82). They were screaming and threatening him. (E.H. 82). Someone swung at petitioner and petitioner saw another individual pull out a gun. (E.H. 82). Petitioner began to run towards his Camaro. (E.H. 82). Petitioner heard someone say, "J, watch your back." (E.H. 82). Petitioner turned around and saw the other men chasing him as he raced back to his car. (E.H. 82). Petitioner reached his car and raised the hood to hook up his car battery.[] Petitioner stated that he was in fear for his life. (E.H. 83). Petitioner stated that he had known people who had been shot and killed. (E.H. 83). When petitioner was six years old, he had witnessed his father being shot and killed. (E.H. 83). Petitioner stated that he himself had been shot twice. (E.H. 83). Petitioner stated that he and his friends were in the car when the shots were fired. (E.H. 85). Petitioner testified that there was not a pistol under the hood of his car. (E.H. 89). However, he stated that there was a gun inside the vehicle. (E.H. 90).

---

[2] Notably, this Court sustained Respondent's Motion to Strike Exhibit 3.  Therefore, the affidavit of Marlon Griffin is not before this Court on its review of Petitioner's habeas petition in support of Claim 2.

4

(ECF No. 10 at 22-23; *see also* ECF No. 18-9 at 82-90). As discussed herein, the Court holds that this self-defense claim fails to meet the standards for habeas relief because it is untimely and has been procedurally defaulted.

1. **Timeliness**

A one-year statute of limitations applies to habeas corpus petitions filed pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d)(1). "For state prisoners, the limitations period runs from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *Camacho v. Hobbs*, 774 F.3d 931, 932–33 (8th Cir. 2015) (quoting 28 U.S.C. § 2244(d)(1)(A)); *Gordon v. Arkansas*, 823 F.3d 1188, 1194 (8th Cir. 2016).

The parties do not dispute the timeliness of Williams's original pro se petition, filed pursuant to 28 U.S.C. § 2254. (ECF No. 1). After counsel entered on behalf of Williams, the Court granted Williams leave to file a first amended petition, which was filed April 5, 2021. (ECF No. 10). Respondent argues that claim 2 in Williams's amended petition is untimely because no factual allegations were included in his original petition. Therefore, the issue before this Court is whether Williams's claims relate back to the claims raised in his original petition.

Williams's original petition included ten claims for relief. (ECF No. 1 at 14-15). In his tenth claim of his original pro se petition, Williams stated: "Trial counsel was ineffective in failing to raise a claim of self-defense in my case, in violation of my rights under the Sixth and Fourteenth Amendments of the United States Constitution." (ECF No. 1 at 15). Williams did not allege a single fact in support of this claim for relief in his original petition. In his Amended Petition, William condensed his claims down to two claims, including Claim 2 for ineffective assistance of counsel for failure to raise a self-defense claim. (ECF No. 10).

5

"[T]o satisfy the statute of limitations, the claims in the Amended Petition must arise out of the same 'common core of operative facts' as those alleged in the original, timely Petition." *Shockley v. Crews*, No. 4:19-CV-02520-SRC, 2023 WL 6381445, at *70 (E.D. Mo. Sept. 29, 2023) (citing *Mayle v. Felix*, 545 U.S. 644, 664 (2005); *see* Fed. R. Civ. P. 15(c)(1)(B)). The "original pleading" referred to in Rule 15 is the complaint in an ordinary civil case and a petition in a habeas proceeding. *Mayle*, 545 U.S. at 655. "In order for the claims in an amended motion to relate back ... they must be of the same 'time and type' as those in the original motion ...." *United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006) (citing *Mayle*, 545 U.S. at 650, 657, 664). A claim in an amended petition does not relate back to the claim in the original petition simply because both claims involve the same "trial, conviction, or sentence." *Id.* at 857 (citing *Mayle*, 545 U.S. at 656–57). "Further, two claims do not share a common core of facts simply because both assert that a particular right was violated at trial." *Shockley*, 2023 WL 6381445, at *71 (E.D. Mo. Sept. 29, 2023) (citing *Dodd v. United States*, 614 F.3d 512, 516 (8th Cir. 2010) (citing several cases holding that an ineffective-assistance claim cannot relate back to an ineffective-assistance claim based on a different set of facts)). Under Federal Habeas Rule 2(c)(2) the habeas petition must "state the facts supporting each ground." *See Mayle*, 545 U.S. at 655 (noting that "Habeas Corpus Rule 2(c) is more demanding" than the pleading requirements of Fed. R. Civ. P. 8(a) in an ordinary civil proceeding); s*ee also Mayle*, 545 U.S. at 655 (citing Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts. [But] it is the relationship of the facts to the claim asserted that is important ... ."); Advisory Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." (internal quotation marks omitted)).

Courts generally decide whether an amended petition relates back by comparing the concrete facts in the amended petition to concrete facts in the original petition. *Mayle*, 545 U.S. at 656.  In habeas actions, courts have found that a claim in an amended petition cannot relate back to a claim that asserts no facts. *See Clifton v. United States*, No. 4:10-CV-01990-CEJ, 2014 WL 1048584, at *2 (E.D. Mo. Mar. 18, 2014) ("These 'new' facts, however, cannot be said to have 'arisen out of the same set of facts as [the movant's] original claims,' because there was no set of facts set forth in the original claim."); *Robertson v. Pierce*, No. 12-CV-03108, 2016 WL 2593344, at *6 (N.D. Ill. May 5, 2016) ("[B]ecause Petitioner's original ineffective-assistance-of-appellate-counsel claim lacks any factual specificity, it is impossible to conclude that Petitioner's supplemental claim shares a common core of facts with that original claim. To hold otherwise would allow a habeas litigant to avoid AEDPA's one-year limitations period by filing placeholder claims ...."). "Indeed, reduced to its base, permitting amendments to relate back to placeholder claims would allow a petitioner to file an omnibus placeholder claim preserving 'any and all future claims.'" *Shockley*, 2023 WL 6381445, at *71; *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000) ("If we were to craft such a rule, it would mean that amendments to a § 2255 motion would almost invariably be allowed even after the statute of limitations had expired, because most § 2255 claims arise from a criminal defendant's underlying conviction and sentence.").

Here, the original pro se petition did not include any facts to support his self-defense theory. The original petition does not identify any uncalled witnesses, documents, or testimony that would support a claim of self-defense. The original petition does not indicate that his trial counsel was aware of any theory of self-defense but refused to present that evidence to the trial court.  The original petition does not state what investigation or evidence trial counsel should have developed but did not.  Rather, the original petition contains only a conclusory allegation that trial counsel

7

did not assert a claim of self-defense, which in ineffective for relation back. Because the original claim 10 pleaded no facts, the amended claim 2 does not arise out of the same "common core of operative fact". *Mayle*, 545 U.S. at 664. Thus, the amended claim 2 does not relate back to the original claim 10 and the Court denies amended claim 2 as time barred.

### 2. Procedural Default

Under the doctrine of procedural default, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022); *Franklin v. Hawley*, 879 F.3d 307, 311 (8th Cir. 2018) (citing *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011)) ("A procedural default occurs when a prisoner violates a state procedural rule and this violation serves as an independent and adequate state-law basis to uphold the state courts' dismissal of a claim, thereby precluding consideration of federal claims on direct appeal."). When the prisoner has failed to do so, and the state court would dismiss the claim on that basis, the claim is "procedurally defaulted." *Shinn v.*, 596 U.S. at 371. "To overcome procedural default, the prisoner must demonstrate 'cause' to excuse the procedural defect and 'actual prejudice' if the federal court were to decline to hear his claim." *Id*. (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *Franklin*, 879 F.3d at 311.

Williams acknowledges that Claim 2 of his first amended petition was not raised in petitioner's amended motion for post-conviction relief. However, Williams claims that there is "cause and prejudice to overcome any procedural bar because post-conviction counsel was

8

ineffective in failing to raise this meritorious claim in the motion court in petitioner's amended motion for post-conviction relief." (ECF No. 10 at 26).

However, Williams argues that his procedural default in Claim 2 should be excused and that he is entitled to a hearing. Williams claims he "is confident he can establish actual prejudice under both *Martinez* and *Strickland* arising from his post-conviction counsel's ineffectiveness". (ECF No. 10 at 27-28). Williams maintains that his claim is substantial. Williams, however, does not plead any facts to support his claim that post-conviction counsel provided ineffective assistance. Williams states, "Post-conviction motion court counsel was ineffective in failing to raise this meritorious claim in petitioner's amended motion for post-conviction relief and in further developing this claim during petitioner's subsequent evidentiary hearing." (ECF No. 10 at 42).

As stated, Williams has failed to plead any specific, particularized facts from which this Court can permit review under *Martinez*. *Martinez*, 566 U.S. at 14 ("To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.").[3] For Williams's claim to be reviewed under *Martinez* and for his procedural default to be excused, he would need to show the existence of ineffective assistance by post-conviction relief counsel and "must state specific, particularized facts which entitle him … to habeas corpus relief." *Adams*, 897 F.2d at 334. Williams has not pleaded facts sufficient to demonstrate that this post-conviction counsel was ineffective and the denies his request for an evidentiary hearing on his *Martinez* claim. *See* ECF No. 10 at 42. The Court further finds that Williams has presented no

---

[3] Williams relies almost exclusively on the affidavit of Marlon Griffin in support of his self-defense claim, but the Court has held that the affidavit cannot be considered on habeas review.

9

basis for the Court to hold an evidentiary hearing on the merits of Claim 2 under 28 U.S.C. § 2254(e)(2).[4]

More to it, the Court holds that Williams has not demonstrated that his second claim is substantial.  The evidence before the Court does not demonstrate that trial counsel overlooked or disregarded a self-defense theory.  At the post-conviction review hearing, trial counsel testified that he did not explicitly remember discussing self-defense with Williams, but noted that it was his practice to do so and that he recalled discussing trial strategy with Williams.  (ECF No. 18-9 at 29-31).  Indeed, trial counsel testified that he and Williams discussed a trial strategy of discrediting witnesses based upon inconsistent statements in the police reports.  *Id*.  Thus, the Court finds that trial counsel made strategic choices, part and parcel with his discussions with Williams, that cannot now be second-guessed as part of this Court's habeas review.  *See Strickland*, 466 U.S. at 681 ("Those strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based."). Finally, even if the Court were to consider any new evidence in support of a self-defense theory, the Court finds that such statements are inconsistent with Williams's testimony at his post-conviction review hearing and, therefore, undercuts his self-defense argument.  That is, Williams's testimony at the post-conviction review hearing was that he did not shoot anyone. (ECF No. 10-9

---

[4] 28 U.S.C. § 2254(e)(2) provides:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
(A) the claim relies on—
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

at 84). Clearly, Williams's testimony is at odds with his new defense and purported evidence that his actions were performed in self-defense. Accordingly, for Williams's claim to be substantial, the Court would need to find that his PCR testimony was perjured and that Williams neglected to mention his new witnesses at both his trial and at his PCR hearing. The Court finds such an argument to be unsubstantial and insufficient to overcome his procedural default.

Finally, the Court finds that Williams cannot demonstrate prejudice necessary under *Martinez*. To demonstrate procedural bar prejudice, Williams "'must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Armstrong v. Kemna*, 590 F.3d 592, 606 (8th Cir. 2010) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982)). The Eighth Circuit has "observed that [procedural bar] 'prejudice' is higher than that required to establish ineffective assistance of counsel under *Strickland*." *Armstrong*, 590 F.3d at 606 (quoting *Charron v. Gammon,* 69 F.3d 851, 858 (8th Cir. 1995)). Thus, for the same reasons the Court finds that Williams's claim is not substantial, the Court also finds that Williams has not demonstrated actual prejudice. That is, Williams has not demonstrated sufficient prejudice under *Strickland,* such that it necessarily follows that Williams has not shown defense counsel's representation "worked to [Williams's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady,* 456 U.S. at 170; *Armstrong*, 590 F.3d at 606. The Court concludes Williams has failed to establish sufficient prejudice to overcome his procedural default.

In sum, nothing in the record "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims

11

will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In the absence of such a showing, federal habeas review is barred. *Franklin*, 879 F.3d at 313–14.

### B. *Batson* Challenge

Claim 1 raises a claim under the Equal Protection Clause of the United States Constitution based upon the trial court overruling Williams's *Batson* challenge to the removal of Venireperson Cynthia Williamson. Williams claims that the purportedly race neutral reason for striking Williamson provided by the State was pretextual, was not supported by the record, and a similarly situated juror was not stricken from the jury panel. Williams argues that the reason for striking Venireperson Williamson—and for not striking another non-black venireperson—"demonstrated [the] implausibility of the reason given by the State for striking Venireperson Williamson as a juror creates a powerful influence [sic] that the State sought to exclude Black women from the jury panel and that Williamson was struck solely because of her race and gender." (ECF No. 10 at 35).

Williams made this same argument before the Missouri Court of Appeals on his direct appeal: "Defendant claims that the State's strike of Venireperson Williamson was racially and gender motivated, and the State's reasons for the strike were pretextual." (ECF No. 18-6 at 5). The Missouri Court of Appeals considered "[t]he totality of the facts and circumstances surrounding the State's peremptory challenges are as follows: (1) the State used all six of its permitted peremptory challenges, pursuant to Section 494.480.2(2); (2) the State exercised all six of its peremptory challenges on African-American females; (3) the resulting jury consisted of three African Americans, one of whom was an African-American female; (4) no white jurors were similarly situated to the two at issue; (5) the trial court's experience with the attorneys involved demonstrated no discriminatory intent." (ECF No. 18-6 at 12). After applying the three-step

12

review process under *Batson*,[5] the Missouri Court of Appeals held that, "although the State used all six of its peremptory strikes to remove African-American female venirepersons, the State offered plausible explanations for its strike[] of" Venireperson Williamson. (ECF No. 18-6 at 15-16).

Under the AEDPA, this Court can only grant habeas relief to Williams if the decision of the Missouri Court of Appeals in its analysis of the *Batson* claim is contrary to clearly established federal law. *See Carey v. Musladin,* 549 U.S. 70 (2006) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000))("'[C]learly established Federal law' in § 2254(d)(1) 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"). Here, the record indicates that the Missouri Court of Appeals reviewed the trial court record, deferred to the factual and credibility determinations of the trial court, and concluded that the race-neutral explanations were not pretextual. The Court of Appeals noted that the trial court relied on its prior experience that counsel lacked racial animus. The Court of Appeals court further noted that Williams, all of the victims and the material witnesses were all African-American, which cut against a finding of racial discrimination. The Court of Appeals further found a plausible

---

[5] The State court's review mirrors the federal process:
>   *Batson* provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race:
>> "'First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race[; s]econd, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question[; and t]hird, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.' "
>> *Miller–El v. Dretke, supra,* at 277[, 125 S.Ct. 2317] (THOMAS, J., dissenting) (quoting *Miller–El v. Cockrell,* 537 U.S. 322, 328–329[, 123 S.Ct. 1029, 154 L.Ed.2d 931] (2003)).

*Snyder v. Louisiana*, 552 U.S. 472, 476–77, 128 S. Ct. 1203, 1207, 170 L. Ed. 2d 175 (2008).

13

explanation for striking Venireperson Williamson. That is, the trial court allowed the strike of Venireperson Williamson based upon her prior arrest as a teenager for drinking a soda on a bus, which the trial court referred to as an "asinine maneuver" by the police officer. The trial court emphasized that Venireperson Williamson was "animated" when the court discussed the incident as a basis for striking her for her poor interactions with police officers. *See* ECF No. 18-1 at 200-01; ECF No. 18-6 at 11. The Court of Appeals further distinguished the strike of Venireperson Williamson from that of Venireperson Cackowski, whom Williams references in his briefing:

> Notably, other jurors that had responded to defense counsel's questions had all been struck for cause and were not available for the exercise of a peremptory strike. Even in the case of Venireperson Williamson, arrested on a bus from a "ridiculous use of police power," compared to Venireperson Cackowski for the first time on appeal, who was properly arrested for an incident admittedly his own fault, the two largely and substantially differ in their experiences. It was obvious, even to the trial court, that Venireperson Williamson's arrest was a unique situation and one that would engender hard feelings toward the police, even years after the incident. The same could be said for any venireperson, regardless of race or gender.

(ECF No. 18-6 at 14-15). Thus, the Missouri Court of Appeals deferred to the trial court, who "could more readily analyze the prosecutor's credibility and demeanor as the prosecutor presented explanations in the context of this case[.]" (ECF No. 18-6 at 16-17). Absent evidence that the trial court erred, the Court of Appeals affirmed the trial court's decision to overrule the challenge to Venireperson Williamson. *Id*.

The Court holds that the Missouri Court of Appeal's analysis and application of *Batson* was reasonable and not contrary to clearly established federal law. *U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.,* 320 F.3d 809, 814 (8th Cir. 2003) (concluding that the trial court engaged in "a full *Batson* analysis" where the objector made a *Batson* challenge, the proponent of the strike offered a race-neutral explanation, both parties were allowed to argue their positions, and the trial court granted the motion without making any specific findings, implicitly finding the proponent's

14

reasons to be racially motivated); *see also Wainwright v. Witt,* 469 U.S. 412, 430 (1985) (upholding a state trial court's dismissal of a juror for cause and noting "that the judge was [not] required to announce for the record his conclusion that [the] juror ... was biased, or his reasoning" because the finding was evident from the record). On habeas review, the Court is not in a position to review the credibility determination of the trial court, particularly where it has been assented to by the Court of Appeals. Indeed, the Court cannot say that the trial court's decision resulted in an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, the Court cannot grant relief under 28 U.S.C. § 2254.

## IV.    Conclusion

Based on the foregoing, the Court finds that Petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be denied. The Court finds that the state court's findings and conclusions regarding Petitioner's claims were not contrary to, nor do they involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Further, because Petitioner has made no showing of a denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Jared M. Williams for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1) and Petitioner's First Amended Petition for a Writ of Habeas Corpus (ECF No. 10) pursuant to 28 U.S.C. § 2254 are **DENIED.**

**IT IS FURTHER ORDERED** that the Petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not issue a Certificate of Appealability. A separate Judgment of Dismissal in accord with this Order is entered on this same date.

Dated this 22nd day of February, 2024.

_____
JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

16